**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 06-4034M |
| ) | |
| v. ) | |
| ) | **DETENTION ORDER** |
| JESSE N. PERKINS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

      On January 31, 2006, the government filed a complaint charging Defendant with a violation of 18 U.S.C. § 1855, willfully starting a wildland fire (Count I, a felony), cutting and damaging trees in violation of 36 C.F.R. § 261.6(a) (Count II, a Class B misdemeanor), and removing trees from the Coconino National Forest in violation of Title 36 of the Code of Federal Regulations (Count III, a Class B misdemeanor).

      The charges stem from an investigation of a wildland fire occurring in the Coconino National Forest on January 18-19, 2006, the "Fisher Fire," which had multiple points of origin and burned approximately one-half acre of National Forest land near Happy Jack, Arizona, before being extinguished. On January 19, 2006, Defendant was contacted by a National Forest Service law enforcement officer and admitted intentionally setting the

Fisher Fire, and admitted committing the other crimes charged in the complaint. As a result of his statements, Defendant was arrested on February 6, 2006.

Defendant's initial appearance was conducted February 7, 2006, in Flagstaff, Arizona. At that time, the government moved to amend the complaint. Defendant, represented by appointed counsel, did not object and the motion to amend was granted. Inter alia, Count I was amended to delete the reference to 18 U.S.C. § 1855 and charge Defendant with a violation of 18 U.S.C. § 1856, leaving a fire unextinguished and unattended, a Class B misdemeanor. Count III was amended to reflect Defendant was accused of violating Title 36 C.F.R. § 261.6(h). At the government's request, a detention hearing was conducted on February 9, 2006. At that time, based upon a preponderance of the evidence before the Court, the Court concluded Defendant posed a flight risk and ordered Defendant detained pending trial. The Court reserved ruling upon whether Defendant would also be detained based upon dangerousness pending further legal research.

## THE BAIL REFORM ACT

Congress enacted the Bail Reform Act in 1984 in response to criticism that the prior law did not provide judges with sufficient authority to make decisions regarding the pretrial release of defendants who posed serious risks of flight or danger to the community. In its commentary to the Act Congress stated: "... it is intolerable that the law denies judges the

-2-

tools to make honest and appropriate decisions regarding the release of [dangerous] defendants." Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 5 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3188.   In amending the bail statutes, "Congress hoped to give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." United States v. Salerno, 481 U.S. 739, 744, 107 S. Ct. 2095, 2099 (1987).

> The Bail Reform Act of 1984, 18 U.S.C. §§ 3141, et seq., requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. []. Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor. [] On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. []

United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (internal citations omitted).

Section 3142(a) of the Act sets forth the analysis the Court must undertake regarding a defendant's release or detention prior to trial.  The Court must first determine whether to release the defendant on his personal recognizance or on an unsecured appearance bond. If not so released, the Court must consider release based on the conditions enumerated in subsection 3142(c).  If the defendant is found to be a flight risk or a danger to the community, the conditions of release may include a bond of an amount sufficient that the defendant, being

-3-

unable to post it, is "de facto" detained. See <u>United States v. Fidler</u>, 419 F.3d 1026, 1028 (9th Cir. 2005).[1]

Section 3142(g) specifies the factors the Court must consider when determining if any set of conditions will assure the defendant's future appearances and the safety of the community:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> (A) the person's character, physical and mental condition, family ties, employment, financial

---

[1] Several other circuits have addressed the apparent violation of § 3142(c)(2) that arises when, as in Fidler's case, a defendant is granted pretrial bail, but is unable to comply with a financial condition, resulting in his detention. It may appear that detention in such circumstances always contravenes the statute. We agree, however, with our sister circuits that have concluded that this is not so. [] *These cases establish that the de facto detention of a defendant under these circumstances does not violate § 3142(c)(2) if the record shows that the detention is not based solely on the defendant's inability to meet the financial condition, but rather on the district court's determination that the amount of the bond is necessary to reasonably assure the defendant's attendance at trial or the safety of the community.* This is because, under those circumstances, the defendant's detention is "not because he cannot raise the money, but because without the money, the risk of flight [or danger to others] is too great." <u>Jessup</u>, 757 F.2d at 389.

<u>United States v. Fidler</u>, 419 F.3d 1026, 1028 (9th Cir. 2005).

-4-

```
            resources, length of residence in the community,
            community ties, past conduct, history relating to
            drug or alcohol abuse, criminal history, and record
            concerning appearance at court proceedings; and
            (B) whether, at the time of the current offense or
            arrest, the person was on probation, on parole, or
            on other release pending trial, sentencing, appeal,
            or completion of sentence for an offense under
            Federal, State, or local law; and
            (4) the nature and seriousness of the danger to any
            person or the community that would be posed by the
            person's release. In considering the conditions of
            release described in subsection (c)(1)(B)(xi) or
            (c)(1)(B)(xii) of this section, the judicial officer
            may upon his own motion, or shall upon the motion of
            the Government, conduct an inquiry into the source
            of the property to be designated for potential
            forfeiture or offered as collateral to secure a
            bond, and shall decline to accept the designation,
            or the use as collateral, of property that, because
            of its source, will not reasonably assure the
            appearance of the person as required.
```

18 U.S.C. § 3142(g) (2000 & Supp. 2005). A detention order must include "written findings of fact and a written statement of the reasons for the detention." Id. § 3142(i)(1). "Rule 9(a)(1) of the Federal Rules of Appellate Procedure further requires that the district court 'state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case.'" United States v. Dowell, 44 Fed. App. 386, 388 (10th Cir. 2002). See also United States v. Fernandez-Alfonso, 816 F.2d 477, 478 (9th Cir. 1987)

**FINDINGS OF FACT**

Based upon the clear and convincing evidence presented at the detention hearing, the Court makes the following findings of fact regarding Defendant's potential danger to the community if he is released:

The evidence that Defendant is predisposed to setting forest fires is great as is his evidence of guilt for all three charges. Defendant confessed he committed the charged crimes to the investigative law enforcement officer. Although Count I of the amended complaint is classified as a Class B misdemeanor, the actual conduct complained of, intentionally starting and abandoning a wildland fire during the driest forest conditions in recent history, poses an extremely serious risk to the lives of the citizens of this state, in addition to their personal property and the property of the United States. The potential for danger caused by Defendant's alleged acts is evidenced by the devastation caused by the 2002 Rodeo-Chediski fire. At this time, given the lack of moisture in the forests and other natural conditions, experts predict Arizona may be facing one of its worst and earliest fire seasons. Firefighters are currently battling a human-caused 1500-acre fire near Payson which threatens the towns of Pine and Strawberry. Firefighters just extinguished a six to ten acre fire on the border of Flagstaff which was human-caused.[2]

The evidence before the Court indicates Defendant is likely to commit additional crimes if released: Defendant is a self-proclaimed "pyro," admits he feels compelled to set fires, and admits that, over the years, he has set multiple wildland fires. Defendant indicated he intends to continue setting

---

[2] Defendant is not accused of starting these fires; the factual finding is noted in reference to the current extreme danger posed by any human-caused fire in National Forests.

forest fires and showed the law enforcement officer where he intends to set fires in the future.

Additionally, a search incident to Defendant's arrest and booking revealed him to be in possession of 4.2 grams of methamphetamine, a loaded hand gun and a loaded rifle. Defendant admitted to a Pretrial Services officer that he had used methamphetamine daily for the past three to six months, and that he is addicted to methamphetamine. The Court notes that individuals who are under the influence of methamphetamine and in possession of loaded weapons pose a particularly serious risk of harm to others and the community. The weapons were provided to Defendant by his father, a federally licensed firearms dealer who is retired, notwithstanding Defendant's father's opinion that Defendant is not "thinking correctly."

Regarding the risk Defendant would flee if released, the Court makes the following findings of fact by a preponderance of the evidence:

Defendant faces additional serious state and federal charges arising from his conduct: a search incident to Defendant's arrest revealed him to be in possession of 4.2 grams of methamphetamine, drug paraphernalia, a loaded hand gun, and a loaded rifle. Additionally, law enforcement officers found marijuana and cultural artifacts allegedly illegally removed from federal lands, at Defendant's rented home in Happy Jack. As stated supra, Defendant is addicted to methamphetamine and his father testified Defendant is not "thinking correctly."

Therefore, the Court concludes Defendant is not able to properly evaluate the consequences of fleeing prosecution. Although the charges involved were later dropped, Defendant failed to appear for criminal court proceedings in 1996 and in 1997. Defendant is self-employed and does not appear to have any ties to the community other than his father. Defendant possesses vehicles which may be used to flee. Defendant's lack of regard for legal authority is demonstrated by the fact the vehicles are not insured and not properly registered. Although Defendant has proposed he be released to the third-party custody of his father, the Court concludes this will not reasonably assure Defendant's appearance at further proceedings and the safety of the community, given Defendant's age (38), and, although he resides nearby and sees his son often, his father's previous inability to detect or deter Defendant's compulsion to set fires, consume methamphetamine, and possess loaded weapons. Additionally, the Court notes there are over forty firearms in the father's home; although Defendant's father has represented to the Court that the weapons are under lock and key, it would not be appropriate to place a methamphetamine addict in such an atmosphere.

    As a matter of law, the Court concludes the government has proved by clear and convincing evidence the Defendant, if released, would constitute a danger to others and the community. The Court further concludes the government has established by a preponderance of the evidence the Defendant poses a flight risk if released pending trial.

Based upon the foregoing findings, the Court will not release Defendant on his own recognizance or an unsecured appearance bond. The Court also rejects the option of releasing Defendant on conditions, including third-party custody or an appearance bond, except as discussed infra. Temporary detention to facilitate deportation or exclusion is not applicable. Therefore, the Court must determine if detention pursuant to section 3142(e) is warranted.

## CRIME OF VIOLENCE

Defendant asserts that, because the three crimes charged are not *per se* "crimes of violence" as that term is defined in section 3142(f)(1) and section 3156(a)(4), Defendant may not be detained pursuant to the Bail Reform Act based on a finding that he is a danger to the community. The term "crime of violence" is defined, in relevant part, as "*an offense* that has an *element of the offense* the use, attempted use, or threatened use of physical force against the person or property of another ..." or "any other offense that is a *felony* and that, *by its nature, involves* a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. ..." 18 U.S.C. § 3156(a)(4)(A) & (B) (2000 & Supp. 2005) (emphasis added). See also 18 U.S.C. § 16.

The federal courts do not agree on whether a defendant may be detained solely on the basis of their dangerousness if the charged crime does not meet the criteria warranting a detention hearing pursuant to section 3142(f). See United States v. Singleton, 182 F.3d 7, 10-11 (D.C. Cir. 1999); United States v.

-9-

Gloster, 969 F. Supp. 92, 95 & n.5 & n.6 (D.D.C. 1995). Compare United States v. Byrd, 969 F.2d 106, 109-10 (5th Cir. 1992), with United States v. Doe, 960 F.2d 221, 223-24 (1st Cir. 1992). The respective views can be summarized as follows:

    1. Any offense (felony or misdemeanor) which has as an "element" the "use, attempted use, or threatened use of physical force" against the person or property of another is a "crime of violence" and no further analysis is required. See Singleton, at 11.

    2. A crime which by its "nature" involves a substantial risk that physical force may be used against the person or property of another in the course of committing the offense, is a crime of violence. The courts are to use a "categorical" approach to determining if a crime is a per se crime of violence, looking only to the intrinsic nature of the offense as it is defined by statute and not to the facts surrounding the alleged offense. See Singleton, 182 F.3d at 11-12; United States v. Johnson, 399 F.3d 1297, 1301-02 (11th Cir. 2005). While the courts which follow the categorical approach rule are in general agreement as to the procedure to be followed, the results may differ in identical cases. Compare United States v. Dillard, 214 F.3d 88, 97 (2d Cir. 2002), with Singleton, 182 F.3d at 16-17; See United States v. Powers, 318 F.Supp.2d 339, 342-44 (W.D.Va.2004).

    3. It is not necessary for the defendant to be charged with a *per se* "crime of violence," only that the charge "involve" a crime of violence or any one or more of the section

-10-

3142(f) factors and the Court may look to the underlying facts regarding the commission of the alleged crime to determine if the crime is a "crime of violence." See Byrd, 969 F.3d at 110. In United States v. Le, an unpublished opinion, the District Court premised this determination on its interpretation of 18 U.S.C. § 3142(f)(1)(A), stating: "Had Congress intended to limit the court's consideration to the charged offense, it would have said so." 2003 WL 21659657 (D. Kan. 2003).

## CONCLUSIONS OF LAW

Reviewing the statement of probable cause in support of the complaint and the evidence presented at the detention hearing, the Court concludes that Count II and Count III are not crimes of violence. These counts of the complaint charge Defendant only with cutting and removing timber from the National Forest without a permit. The charged crimes do not include elements requiring the use of physical force, the charged crimes are not felonies, and there is no connection between these counts of the complaint and the charge or activity of setting and abandoning a fire.

Count I, as amended, charges a violation of 18 U.S.C. § 1856:

> Whoever, having kindled or caused to be kindled, a fire in or near any forest, timber, or other inflammable material upon any lands owned, controlled or leased by, or under the partial, concurrent, or exclusive jurisdiction of the United States ... leaves said fire without totally extinguishing the same, or permits or suffers said fire to burn or spread beyond his control, or leaves or suffers said fire to burn unattended, shall be fined under this title or imprisoned not more than six months, or both.

The question presented is whether Count I is a "crime of violence" such that the Court may properly order Defendant detained without bond. Pursuant to section 3156(a)(4)(A) the Court must determine if the "use, attempted use, or threatened use of physical force" is an element of the crime charged. If Count I had remained as originally charged, a violation of section 1855, the task would be easy; section 1855 describes an arson charge and arson is a crime of violence for detention purposes. See United States v. Mitchell, 23 F.3d 1, 2 (1st Cir. 1994); United States v. Marzullo, 780 F. Supp. 658 (W.D. Mo. 1991).

Regarding the elements of section 1856, in United States v. Launder, the Ninth Circuit held that this statute required an additional element not specifically mentioned:

> The legal terms "permitting" and "suffering" clearly require a willful act or a willful failure to act in the face of a clear opportunity to do so ... In including the terms "permits" and "suffers" in section 1856 Congress evidenced its intention that a defendant not be found culpable under the statute unless the government has shown a willingness on his part to allow the fire to burn beyond control, or at the least that he failed to make all reasonable efforts to extinguish the fire ... Congress intended that a showing of criminal intent be required ...

743 F.2d 686, 689-90 (9th Cir. 1984).

Section 3156(a)(4)(A) defines a "crime of violence" to be any offense which has as an element the use of physical force against the property of another.[3] The statute does not mention

---

[3] The term "property of another," includes property belonging to the United States government. See England v. United States, 174 F.2d 466, 468 (5th Cir. 1989); United States v. Maxon, 26 F. Cas. 1220, 1220 (C.C.E.D.N.Y. 1866) (No. 15748).

-12-

an intent requirement, however, should a criminal intent be required, the Launder decision read such an intent into the statute. By intentionally starting and abandoning a wildland fire within the National Forest and burning National Forest lands and property, it is the Court's conclusion Defendant utilized physical force against the property of another and has committed a "crime of violence" as that term is defined by the federal statutes governing the pretrial detention of an accused.

The Court also finds it appropriate to look to the underlying facts of the charge against Defendant. In United States v. Twine, the Ninth Circuit Court of Appeals, citing Byrd, stated: "We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based *solely* on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. §3142(f)(1) and (2)."  344 F.3d 987, 987-88 (9th Cir. 2003) (emphasis added). Similarly, in United States v. Serna, ___ F.3d ___ , 2006 WL 156731 (9th Cir. Jan. 23, 2006), and United States v. Young, 990 F.2d 469, 471-72 (9th Cir. 1993), applying the United States Sentencing Guidelines' definition of "crime of violence" in a sentencing context, the Ninth Circuit instructed the district courts to look first to the elements of the offense and then to the actual conduct underlying the charge, to determine if the crime of

conviction was a crime of violence.[4]

Therefore, the Court concludes that, even if a violation of section 1856 is not a *per se* crime of violence as that term is defined in 18 U.S.C. § 3156(a)(4), the plain language of the detention statute instructs the Court to consider not only whether the crime charged is a *per se* crime of violence, but whether the charged crime *involves* a crime of violence, and also the nature and circumstances of the offense charged, when determining if a defendant is a danger to the community and should be detained pending trial. See, e.g., United States v. Bess, 678 F. Supp. 929, 933 (D.D.C. 1988) ("It is the Court's independent application of the factors listed in § 3142(g), in light of all the evidence of defendant's dangerousness, that determines whether pretrial detention is appropriate"). Cf. Byrd, 969 F.2d at 110 ("In other words, it is not necessary that the charged offense be a crime of violence; only that the case involve a crime of violence or any one or more of the § 3142(f) factors. But the proof of a nexus between the non-violent offense charged and one or more of the six § 3142(f) factors is crucial."); United States v. Himler, 797 F.2d 156, 160 (3d Cir. 1986) ("the question, presented here, of whether the statute authorizes pretrial detention upon proof of danger to the

---

[4] It has been suggested that, although they utilize the same language, i.e., "crime of violence," the definition of a crime of violence in a detention proceeding should be broader than in a sentencing context. See United States v. Campbell, 28 F. Supp. 2d 805, 809 (W.D.N.Y. 1998); United States v. Stratton, 2001 WL 527442, at 2 (D.Ariz. 2001); United States v. Allen, 2006 WL 126644, at 7 (D.Md. Jan. 13, 2006).

-14-

community other than from those offenses which will support a motion for detention. We now hold that it does not."). In further support of this conclusion are the opinions of several Circuit Courts of Appeal that, at a pretrial detention hearing, evidence of the defendant's dangerousness need not be connected to the underlying criminal charge. See <u>United States v. Rodriquez</u>, 950 F.2d 85, 88 (2d Cir. 1991) (stating that the district court must not reject evidence of dangerousness solely on the absence of a nexus between drug charges and the danger posed); <u>United States v. Quartermaine</u>, 913 F.2d 910, 917 (11th Cir. 1990) (defendant's acts of domestic violence supported finding of dangerousness where defendant was being prosecuted for an unrelated charge).

**CONCLUSION**

Based upon the Court's determination that the crime charged in Count I is a "crime of violence" or "involves" a crime of violence, and also on the other factors stated in section 3142(g) and discussed above, the Court concludes the Defendant poses by clear and convincing evidence a danger to the community.[5]  I further find by a preponderance of the evidence

---

[5] Although not a published opinion, the dicta in a case from the United States Tenth Circuit Court of Appeals involving a drug and prohibited possessor crime is persuasive:
> We conclude that the government provided clear and convincing evidence that Mr. Kelsey has demonstrated an inability to stay away from drugs and drug-related activity, thereby making him a danger to society. The district court's finding that Mr. Kelsey's proven ability to hide his drug activity from his closest friends and family members makes it unlikely that his mother's supervision could reduce the risk that he would

-15-

defendant is a flight risk. I find that no condition or combination of conditions will reasonably assure Defendant's appearance as required and the safety of any other person and the community. Should the Court's conclusion that Count I is or involves a crime of violence, or the Court's ability to review the underlying evidence, prove erroneous, the Court would enter an order releasing defendant on conditions, most importantly the condition that Defendant post a cash bond in the amount of $300,000, recognizing this would most likely result in the "de facto" detention of Defendant, as authorized by Fidler.

DATED this 15th day of February, 2006.

_____
Mark E. Aspey
United States Magistrate Judge

---

continue to possess or to distribute drugs in the community if released on bail is not clearly erroneous.
United States v. Kelsey, 82 Fed. App. 652, 654 (10th Cir. 2003).